[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 525 
This suit, in lieu of a prerogative writ, is one that would have been in the nature of mandamus and certiorari under our former practice. Plaintiff seeks to set aside an Ordinance for the Regulation and Licensing of Trailer and Tourist Camps in the Township of Pemberton, Burlington County, New Jersey, which was adopted April 21, 1948, by the governing body of that municipality. The plaintiff further seeks to set aside the decision of the Township Committee wherein it denied plaintiff's application for a permit for which the plaintiff applied for the operation of a trailer and tourist camp. Plaintiff further seeks the aid of the court to compel the aforesaid Township Committee to issue the desired permit to the plaintiff.
The defendants base their denial of the permit to the plaintiff on the ground that plaintiff failed to comply with the health requirements of the aforesaid trailer ordinance and also that the trailer camp site for which the plaintiff seeks a permit is within a restricted residential area as defined by the zoning ordinance adopted by the Township of Pemberton on August 4, 1939.
Plaintiff, in rebutting the contentions raised by the defendants, urges that the aforesaid trailer camp ordinance is unconstitutional and void for the reason that it does not lay down any standard by which the municipal officials shall be governed in the granting or denial of permits provided for in the ordinance; that the defendants in denying plaintiff's application for a permit acted in an arbitrary and capricious manner; and finally, that the zoning ordinance furnished no justification for the defendants' denial of the plaintiff's application for a trailer camp license.
The trial of the case consumed two days. At the hearing there was much conflicting testimony as to whether or not the trailer camp now used by the plaintiff affects the health and safety of the community. The undisputed facts show that the township adopted a zoning ordinance on August 4, 1939, which created a residential district and a business district. It further appeared that subsequent to the enacting of the zoning ordinance the plaintiff established and maintained *Page 527 
a trailer camp in that part of the municipality delineated in the zoning ordinance as a "Residential District" and has continued to maintain it up to the present time. It further appeared that on April 21, 1948, the township adopted the Trailer, Tourist Camp Ordinance which provided, inter alia, that no trailer camp could be maintained without a permit. It appeared further that the plaintiff applied for a permit under the trailer ordinance, which application was denied on September 11, 1948. Members of the Township Committee testified that they ascribed their denial for the reason that the trailer camp site of the plaintiff was located within the restricted area under the zoning ordinance of 1939, and that the camp site did not comply with the health regulations of the trailer ordinance of 1948.
It further appeared that there are now 38 trailers at the site wherein approximately 100 people are living.
On the second day of the trial plaintiff further contended the trailer ordinance was void by reason of the recent decision of the Appellate Division of Edwards v. Mayor and Council of theBorough of Moonachie, 3 N.J. Super. 10, 65 A.2d 78 (App.Div. 1949). In that case, however, it was conceded that the ordinance was solely for the purpose of revenue and not regulation. In the present case, while the ordinance has to do with the raising of revenue, it is also for the purpose of regulation. Therefore, it may be sustained as a proper exercise of police power under R.S. 40:48-2. See Prinz v. Borough ofParamus, 120 N.J.L. 72. The mere fact that a municipality may collect revenue under an ordinance does not preclude it from exercising its police power under such ordinance to reasonably regulate any business the unrestrained pursuance of which might affect the public health and safety. Certainly, as long as the revenue collected under the ordinance is such an amount as may be reasonably expended in enforcing the regulatory ordinance and for the added burden to the township, the ordinance cannot be said to be one for the raising of revenue only. The present ordinance calls for an annual license fee of $15 for each trailer space, which license fee is for the purpose of revenue. This *Page 528 
seems a reasonable amount for the added municipal burden imposed by a trailer camp. In any event, there is no proof before me that it is unreasonable or confiscatory, and the presumption is (until the contrary is shown) in favor of the validity and reasonableness of a properly enacted ordinance. American GroceryCo. v. Board of Commissioners of New Brunswick, 124 N.J.L. 293,297.
Plaintiff contends the Trailer Ordinance is unconstitutional in that it vests arbitrary discretion in the governing body with respect to a business without prescribing a uniform rule of action.
The challenged section of the ordinance provides in section 2(c) as follows:
"The Township Committee shall thereupon make or cause to be made a thorough investigation upon the information contained in the application and other information which the Committee may obtain, and shall determine whether or not such permit shall be granted, and if granted, may fix the terms under which the said permit is granted."
Plaintiff has cited the case of Yick Wo v. Hopkins,118 U.S. 356, 30 L.Ed. 220, which holds that an ordinance which gives arbitrary power to the governing body to give or withhold consent not only as to places but as to persons is intolerable under the constitution.
Plaintiff has also cited the case of Lipkin v. Duffy,119 N.J.L. 366, and South Orange v. Heller, 92 N.J. Eq. 505, which holdings are to the same effect. However, it would seem that the present trailer ordinance is not unconstitutional under the authority of the United States Supreme Court case of Goriebv. Fox, 274 U.S. 603, 71 L.Ed. 1228. The Gorieb case
distinguished the Yick Wo case on the ground that in the latter case the ordinance vested uncontrolled discretion in the board of supervisors and this discretion was actually exercised for the express purpose of depriving the petitioner in that case of a privilege that was extended to others. In the Gorieb case a local ordinance divided the city into business and residential districts for the declared purpose of establishing building lines and regulating and restricting the construction and location of buildings and for other purposes. *Page 529 
Another ordinance created a set back or building line with relation to the street applicable to all buildings to be erected. The city council by a proviso reserved to itself the authority to make exceptions and to permit the erection of buildings closer to the street. The set back ordinance was assailed as contravening the equal protection clause of the Fourteenth Amendment of the Federal Constitution, in that its provisions enabled "the council unfairly to discriminate between lot owners by fixing unequal distances from the street for the erection of buildings of the same character under like circumstances."
Dismissing this contention, Mr. Justice Sutherland said:
"We cannot, of course, construe the ordinance as meaning that the power may be thus exerted; nor may we assume in advance that it will be exercised by the council capriciously, arbitrarily or with inequality. It will be time enough to complain when, if ever, the power shall be thus abused."
Gorieb v. Fox, supra, was cited with approval by Mr. Justice Heher in Brandon v. Board of Com'rs of Town of Montclair,124 N.J.L. 135, at p. 143; affirmed, 125 N.J.L. 367. However, I do not wish to base my decision on the question of whether or not the trailer ordinance is constitutional. Nor do I wish to base my decision on whether or not the trailer camp site as maintained is a menace to the safety and welfare of the community. As said above, there was conflicting testimony as to this and I do not feel that I am called upon to resolve that issue in arriving at my conclusion in this case. Nor do I feel called upon to determine whether or not the Township Committee acted arbitrarily or capriciously on that issue. I base my opinion on the ground that the plaintiff's action must fail for the reason that the trailer camp site for which he demands a permit or license is in a concededly residential district as defined in the Zoning Ordinance of 1939, which ordinance does not permit the establishment of trailer camps within a "Residence District."
Plaintiff has urged five reasons why the zoning ordinance furnished no justification for the decision of the Township *Page 530 
Committee in denying the application of the plaintiff for a trailer camp license. These will be taken up in the order named.
1. "The ordinance requiring the issue of a license must itself be the guide to eligibility for the license."
It must be remembered, however, that the members of the governing body are bound by the comprehensive plan designed to promote the specified statutory purposes (R.S. 40:55-30 etseq.) relating generally to the health, safety and welfare of the community. The governing body cannot act in violation of this comprehensive plan, namely, the zoning ordinance. CompareCassinari v. Union City, 1 N.J. Super. 219, 63 A.2d 891
(App. Div. 1949).
2. "There is no language in or fair implication from the zoning ordinance that trailer camps are to be prohibited in a residential district."
It is conceded that the plaintiff's trailer camp is located in a residential area as delineated by the zoning ordinance. Article VI of said zoning ordinance sets forth the type of buildings that may be permitted in residential districts, the first of which is a "Dwelling." The ordinance also permits in this district apartment houses, apartment hotels, lodging houses or boarding houses. Plaintiff contends that a trailer or group thereof comes within the category of "Dwelling" and does not violate either the language or the spirit of the zoning ordinance.
The term "dwelling" is one of multiple meanings. It does not always have the same sense in all cases, for it may mean one thing under an indictment for burglary or arson, another under the homestead law, another under the pauper law and another in a contract or devise. See 28 Corpus Juris Secundum 600. But the particular meaning intended to be expressed by the term when used in a given instance may be rendered obvious by the context or attendant circumstances and, usually, resort must be had to those aids to interpretation to ascertain what is meant.
It is the court's opinion that the term "dwelling" in relation to the context of the zoning ordinance cannot be reasonably *Page 531 
interpreted to include a trailer camp site with a number of trailers thereon. The ordinance provided in the Residence District for multiple living units and particularly identified them as "apartment building," "apartment hotel," "lodging or boarding houses," * * * "hospitals," "clubs," "apartment buildings," "apartment hotels," "sanitariums" or "similar institutions * * *." Had the governing body intended a trailer camp (which certainly consists of multiple living units) to be included in the Residence District it would have plainly enumerated it.
Counsel for each side have furnished a number of examples of the use of the word "dwelling" by judges in their opinions, and by lexicographers and others in their writings. I do not find it useful to deal with these precedents or authorities in detail, because so much depends upon the connection in which the word was used. Words in themselves should have no magic. They should not be our masters. A word in one context may have a different meaning when used in another context. For example, under the terms of an insurance policy a trailer was held to be a "building" while it was being used as a stationary dwelling but was held not to be a "building" but a vehicle when in mobile use. See Aetna Life Insurance Co. v. Aird, 108 Fed. Rep.2d 136 (Circuit Court of Appeals, 5th Circuit 1939).
Thus it will be seen that all language will bear some different meanings when used in various environments.
"`When I use a word,' Humpty Dumpty said, in rather a scornful tone, `it means just what I choose it to mean — neither more nor less.'
"`The question is,' said Alice, `whether you can make words mean so many different things.'
"`The question is,' said Humpty Dumpty, `which is to be master — that's all.'" Through the Looking Glass.
However, I hasten to add that a word may mean what one chooses it to mean in the light of the surrounding circumstances,provided always, that the court feels that the meaning of the word would so be interpreted in the same manner by reasonable men. It is my opinion that in the present case *Page 532 
reasonable men would never consider a trailer camp (and particularly one encompassing 38 trailers with the attendant facilities) as a dwelling or dwellings within the comprehensive plan in the development of the municipality as embodied in the Zoning Ordinance of 1939.
3. "The defense of the zoning ordinance if permitted by the court would confront the plaintiff or any other litigant with circuity and futility of action which could be raised as an obstacle at the will of the Township Committee. Had the plaintiff applied for a variance * * * under the zoning ordinance, * * * the authorities in charge of that matter might have denied his application on the ground that he had not yet secured his trailer camp permit and he therefore would or could be buffeted back and forth from one tribunal to another ricocheting from each to the other at a tempo to be fixed by the arbitrary governors who prevail in that community."
In support of the above statement plaintiff cites the opinion of Mr. Justice Lloyd in the case of Cohen v. Thompson,129 A. 700, 701 (not officially reported). In that case the relator sought to compel the board of health of a municipality to issue a license to him to conduct a lunchwagon. The relator had previously made application for the necessary license, but was informed by the board that his "application was laid on the table until such time as you (he) received a permit as required by the ordinance controlling the building department of the city." Mr. Justice Lloyd denied the application for a writ of mandamus on the ground that the relator had not complied with the ordinance of the board of health. In the course of his opinion regarding the condition laid down by the board of health, Mr. Justice Lloyd said:
"If this were the whole case, doubt might arise as to the right of the board to predicate the issuance of the license on the relator first obtaining a license from the building department of the city. The building department might as well reply to an application to it that license from the board of health had not yet been procured, and then, driven from one department to the other, the applicant would be in a helpless position." *Page 533 
The above language of Mr. Justice Lloyd may be readily distinguished from the situation in the case under discussion. Here the governing body denied plaintiff's application on the ground that to grant it would be a violation of the zoning ordinance. As has been said above, the governing body is bound by the terms of the zoning ordinance and cannot violate it. A board of adjustment could not reply to an application to it for a variance that a license from the township committee had not yet been procured. The guiding standards which govern the exercise of the powers of a board of adjustment are carefully set forth inR.S. 40:55-39. Those powers stem directly from the statuteR.S. 40:55-39. See Duffcon Concrete Products, Inc., v. Boroughof Cresskill, 1 N.J. 509, at p. 516 (Sup. Ct. 1949). If a property meets the requirements set forth in the above named statute, the owner of the property is entitled to a variance. There is no requirement that the owner of the property obtain a license to do business as a prerequisite to obtaining a variance. Therefore, plaintiff could not be buffeted between the Board of Adjustment and the Township Committee.
It is to be noted that the Township Committee did not table plaintiff's application until he received a variance from the Board of Adjustment. The refusal was bottomed on the fact that it would have been a violation of the zoning ordinance. Plaintiff to have succeeded before the Board of Adjustment would have had to show either "special exception" or "exceptional topographic conditions" or "other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of such property" or "special reasons."R.S. 40:55-39. These special exceptions or special reasons which must be shown to gain a variance are far different from the qualifications under the building ordinance in the case of Cohenv. Thompson, supra.
4. "The Township Committee had no general jurisdiction to enforce the requirements of the zoning ordinance." *Page 534 
Under this point plaintiff urges that "if a board of adjustment had not first passed on the matter, certainly the Township Committee could not do so, for its jurisdiction in zoning matters is entirely legislative * * *." However, as has been stated above, the members of the Township Committee were bound by the terms of the ordinance and could do no act in violation thereof. Until a board of adjustment acted in recommending the granting of a variance, the zoning ordinance prohibited the defendant Township Committee, the plaintiff, or any other person from doing any act in violation thereof.
5. "The application of the zoning ordinance to this plaintiff is illegal for the reason that it is essential there be provided as a part of the zoning scheme a board of adjustment to deal with hardship cases and when no board of adjustment has been provided for, the zoning ordinance is void." Citing Somers v. Borough ofBradley Beach, 115 N.J.L. 135.
However, the zoning ordinance does provide for the establishment and appointment of a board of adjustment. It further appears that notwithstanding the provisions of the ordinance, no board of adjustment was ever appointed or that one functions at present. Plaintiff contends "the essential machinery of the zoning law not having been provided in fact for the benefit of this plaintiff, it is just as much wanting as if it had not been provided in law." However, if the plaintiff wished to obtain a variance he was not without means of adequate relief. On proper application the court could have awarded the appropriate writ to compel the appointment of the necessary members to permit the board of adjustment to function. Oliva v.City of Garfield, 1 N.J. 184 (1948).
I conclude that the municipal action in denying plaintiff's application for a permit should be sustained, and that judgment be entered for defendants. *Page 535